IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SAMUEL D. LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:10-CV-443-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM  OPINION AND ORDER

Samuel Dale Lewis ("Plaintiff" or "Lewis") filed an application for Social Security disability insurance benefits and supplemental security income on December 5, 2006, for a period of disability which allegedly began January 1, 2004 (Tr. 133-44).  Plaintiff's application was denied on October 23, 2008 (Tr. 5-7) and Lewis underwent a hearing before an Administrative Law Judge ("ALJ") on June 16, 2008, which was continued on October 8, 2008.  (Tr. 9).  The ALJ issued an unfavorable decision on October 23, 2008. (Tr. 5-7).  Once the Appeals Council rejected review on March 26, 2010 (Tr. 1-3) the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The Court has jurisdiction over this lawsuit pursuant to 42 U.S.C. § 405(g) and the parties

---

[1] Pursuant to the Social Security Independence and program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred tot he Commissioner of Social Security.

consent to the undersigned rendering a final judgment in this lawsuit pursuant to 28

U.S.C. § 636 (c)(1) and M.D. Ala. LR 73.1.  For the reasons that follow, the Court

AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Lewis seeks judicial review of the Commissioner's decision denying his

application for disability insurance benefits and supplemental security income.  United

States District Courts may conduct limited review of such decisions to determine whether

they comply with applicable law and are supported by substantial evidence.  42 U.S.C. §

405 (2006).  The Court may affirm, reverse and remand with instructions, or reverse and

render a judgment.  *Id.*

## II. BACKGROUND

Lewis was born July 16, 1963.  (Tr. 133).  Lewis completed the tenth grade in

school and attended special education classes while in school.  (Tr. 18-20).  Lewis

testified that he is unable to work because of hemorrhoidal problems.  (Tr. 18, 33).  The

record lacks any indication of accident or any other incident which might trigger the onset

of disability.  The medical records provided include psychological evaluation performed

by Dr. Jerry L. Hart, Ph.D., on January 31, 2001.  (Tr. 207-10).  The medical records also

show that Lewis has also been treated for cervical radiculopathy, degenerative changes in

his wrist, and cervical strain.  (Tr. 207-66).  Dr. Robert Estock, M.D., conducted a

psychiatric review and mental residual functional capacity assessment on February 15,

2007, after which Dr. Estock noted Lewis "revealed-affect was normal; motor activity within normal range; thought process and thought content undisturbed; claimant able to understand instructions without difficulty; claimant with history of alcohol use and substance abuse both now in partial remission; full scale IQ WAIS-3 59."  (Tr. 216-32). Lewis has provided an affidavit as well as testimony as to the severity of his hemorrhoids and the associated debilitating pain.  (Tr. 204-06).

Dr. Hart performed the "Wechsler Adult Intelligence Scale-Third Edition" test to obtain the "prorated Full Scale IQ score of 59."  (Tr. 209).  During the testing "[a]ll six of the standard subtests were administered within the Verbal Scale section but only four were administered within the Performance Scale section due to time limitations."  *Id.* Because of this incomplete testing the IQ score was "prorated."  *Id.*  Dr. Hart stated that "[t]hese scores fall within the range of Mild Mental Retardation."  *Id.*  However, he goes on to state that "[i]t is believed that [Lewis'] scores may represent a somewhat lowered estimate of his abilities but that it is unlikely that he would have scored in a higher range even under optimal conditions in which he was well rested and having his own reading glasses."  *Id.*  The evidence of Lewis' IQ score, as well as other related documents to his alleged mental retardation, were presented to the ALJ on June 16, 2008.  (Tr. 30-32).

### III. STANDARD OF REVIEW

The Court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards.

*Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). The Court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129,131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.; Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### IV. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

the poverty line.[3]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  Despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§

---

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

404.1520, 416.920 (2010).

>    (1)    Is the person presently unemployed?
>    (2)    Is the person's impairment(s) severe?
>    (3)    Does the person's impairment(s) meet or equal one of the specific
>           impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
>    (4)    Is the person unable to perform his or her former occupation?
>    (5)    Is the person unable to perform any other work within the economy?
>    An affirmative answer to any of the questions leads either to the next
>    question, or, on steps three and five, to a finding of disability.  A negative
>    answer to any question, other than step three, leads to a determination of
>    "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the

_____

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical

Vocational Guidelines[5] ("grids") or hear testimony from a Vocational Expert (VE).  *Id*. at

1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary

or light work, inability to speak English, educational deficiencies, and lack of job

experience.  Each factor can independently limit the number of jobs realistically available

to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required

finding of "Disabled" or "Not Disabled."  *Id.*

## V. STATEMENT OF THE ISSUES

Plaintiff alleges the ALJ made four errors.  (Pl. Br. at 1).  First, Plaintiff argues

"the Commissioner erred by failing to find that the claimant met a listed impairment."  *Id*.

Second, Plaintiff argues "the Commissioner committed reversible error in failing to

properly evaluate Mr. Lewis' subjective complaints on his ability to work."  *Id*.  Third,

Plaintiff argues "the Commissioner erred by giving significant weight to the non-

examining reviewing consultant."  *Id*.  Finally, Plaintiff argues "the Commissioner

committed erred by finding that the claimant was able to perform past work."  *Id*.  The

issues and arguments Lewis raises turn upon this Court's ultimate inquiry of whether the

Commissioner's disability decision is supported by the proper legal standards and by

substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987).

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

## VI. DISCUSSION AND ANALYSIS

**A.     The ALJ correctly found Lewis did not meet the listed impairment.**

The ALJ found Lewis suffers from mild mental retardation (Tr. 10) but also found that "the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR part 404, subpart P, Appendix 1." (Tr. 11).  Lewis argues the ALJ should have found he suffers from the listing impairment of mental retardation under 12.05(B) or (C).  (Pl. Br. 4-5).  The Court finds the decision by the ALJ is supported by the substantial weight of the evidence.

The Supreme Court has held that "[f]or a claimant to show that his impairments matches a listing, it must meet all of the specified medical criteria" and that "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivant v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) (citing Social Security Ruling (SSR) 83-19).  The claimant has the burden of producing medical evidence that establishes all of the required medical findings.  *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S.Ct. 2287, 2294, 96 L.Ed.2d 119 (1987).  The Eleventh Circuit has also stated that the claimant:

> must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency.

*Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) (citing 20 CFR § 404.1525 and 404.1526)

The listing provides that in order to qualify under mental retardation the claimant must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 CFR 404, Subpt. P, App. 1, §12.05.  Subparagraph (B) requires "[a] valid verbal, performance, or full scale IQ of 59 or less;" wile Subparagraph (C) requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id*.

Lewis argues that "[a] claimant whose impairment meets a listing is disabled"  (Tr. 4) but fails to recognize that the meeting of the Listing is a presumptive finding of disability which still requires the claimant to "prove that an impairment is disabling."  20 CFR § 404.1572(a).  "Despite the presumption that attaches based on a valid IQ, even 'a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.'"  *Burt v. Barnhart*, 151 Fed. Appx 817, 819 (11th Cir. 2005) (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir.1992)).  It has been long held in the Eleventh Circuit that a valid IQ score is not necessarily conclusive evidence of mental retardation and that the ALJ may properly discount IQ test results if they are not consistent with other evidence in the record, specifically including daily activities and behavior of the claimant.

*See Popp v. Heckler*, 779 F.2d 1497, 1499-50 (11th Circ. 1986) (upholding a finding that IQ testing results were not credible because "there was good reason to believe that [he] exaggerated his problems")*; Lowery*, 979 F.2d at 837 (finding that a valid IQ score is not necessarily conclusive evidence of mental retardation, where the IQ score is inconsistent with the other evidence in the record concerning the claimant's daily activities and behavior); *Williams v. Callahan*, Civ. Act. No. 1:93-CV-2618-JEC, 1998 WL 951492 at *4 (N.D. Ga. July 21, 1998) (noting that "the Commissioner is required to take both the IQ test and the medical report into account and to examine the test results in order to ensure consistency with daily activities and behavior"); *Harper v. Apfel*, Civ. Act. No. 99-0758-AH-L, 2000 WL 1369507 at *4 (S.D. Ala. Sept. 13, 2000) (holding that an ALJ may discount an IQ test result if it is not consistent with the other evidence including daily activities and behavior).

The ALJ looked to Lewis' adaptive functioning, specifically noting that Lewis had "sustain[ed] work at the SGA level for many years," had the ability to drive a car, obtained a license even without taking the written examination, participated in the AA program, exerted efforts to obtain unemployment compensation, helped care for aging parents, testified to social interactions with friends, and other activities of daily living. (Tr. 10).  The adaptive daily activities considered by the ALJ covered the time period in which Lewis claims that he only suffered from the mental retardation as well as those

time periods wherein the additional physical impairments of hemorrhoids, bad nerves, and all other medical impairments raised by Lewis.  (Tr. 10-13).

The ALJ full considered the rest of the report prepared by Dr. Hart when he examined Lewis.  (Tr. 10-14).  Dr. Hart states that Lewis was "found to be alert and well-oriented."  (Tr. 207).  Dr. Hart went on to say that "[d]uring the formal testing portion of the assessment, Mr. Lewis was able to understand the instructions without difficulty."  *Id.*  When "mild tremulousness" was noted by Dr. Hart, Lewis stated "I've always had bad nerves" but did not go further into the issue.  *Id.*  When Dr. Hart gave Lewis the ability to discuss any other medical issues he may be having Lewis indicated "that he has been 'having hemorrhoid problems for three or four years'" and that he had recovered from "slightly cracked" ribs.  (Tr. 208).  Lewis did not mention any other indication of pain or ailment and the ones he did mention can at best be interpreted to have been communicated to Dr. Hart as mild inconveniences.

While Lewis correctly notes that "there is a presumption that mental retardation is a condition that remains constant throughout life" and therefore the claimant "need not present evidence that she manifested deficits in adaptive functioning prior to age twenty two when she had offered evidence of low IQ test scores after age twenty two" it is significant that Lewis states in his application for supplemental security income that he was not disabled prior to age 22.  (Tr. 133); *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001).  Dr. Hart states that "[t]his estimate may be consistent with his dropping

out of school in the tenth grade wherein he had been in special classes" but the Court finds that this is insufficient to overcome Lewis' own declaration of no onset of impairment before age 22, as required by 20 C.F.R. 404, Subpt. P, App. 1, §12.05.

Further, the Eleventh Circuit has held that an "estimated IQ score" is not the equivalent of a "valid IQ score of 60-70" required by the Listings and there is no authority requiring the ALJ to adopt such a methodology or to find the claimant satisfied his burden with an estimated score. *Burt*, 151 Fed. Appx at 820 ("In reaching this conclusion, we observe that an "estimated IQ score" simply is not the equivalent of the "valid IQ score of 60-70" required by the Listings and *Hughes*."). The tests conducted on Lewis were not complete "due to time limitations." (Tr. 209). Consequently, the Performance Scale IQ as well as the Full Scale IQ test scores were prorated based on the portions of those tests that were completed. *Id*.

The Eleventh Circuit also held that a "valid IQ score is not conclusive of mental retardation when the IQ score is inconsistent with other evidence in the record about claimant's daily activities." *Outlaw v. Barnhart*, 197 Fed. Appx 825, 827 (11th Cir. 2006). The ALJ was aware of the IQ test results; however he inartfully stated his reasons to discredit the test finding "no valid IQ score to analyze." (Tr. 10). The ALJ may not have been as clear as possible because Dr. Hart qualified his opinion when he said that the scores "may represent a somewhat lowered estimate of his abilities" but then went on to say that "it is unlikely that he would have scored in a higher range even under optimal

conditions." (Tr. 209). The Court finds that the ALJ properly interpreted Dr. Hart's statement in that while Lewis could be tested any number of additional times, that his test scores would more than likely be similar to the results of the prorated scores. However, these additional test scores would also be low based on his activities and his adaptations in his daily life. The ALJ properly found, based on his past and present activities, that the IQ score was not indicative of the "significantly subaverage general intellectual functioning" as defined by the Listing. 20 C.F.R. 404, Subpt. P, App. 1, §12.05.

There is simply a lack of medical evidence of record to support the Plaintiff's alternative argument that there exists other "severe" impairments under 12.05(C). (Pl. Br. 4). Lewis supplied medical records which show a mild degeneration change in the cervical spine (Tr. 250), no acute abnormality in his right wrist (Tr. 249), and strains in his neck (Tr. 265). There is no objective medical evidence of record that he suffers from a severe impairment from hemorrhoids. A "claimant's subjective testimony supported by medical evidence that satisfies the [pain] standard is itself sufficient to support a finding of disability." *Brown*, 921 F.2d at 1236. "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote*, 67 F.3d at 1561. "When evaluating a claimant's subjective symptoms, the ALJ must consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii)[p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any

medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief ... of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 Fed. Appx. 944, 947 (11th Cir.2010) (quoting 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3)).  The ALJ considered all of these factors and found that the pain alleged by Lewis alone was not sufficient to be considered one of the other "severe" impairments required 12.05(C).  Nothing is before th Court which requires reversal of the ALJ in this regard.

**B.     The ALJ properly applied the Eleventh Circuit pain standard.**

Lewis argues the ALJ committed reversible error because he did not properly evaluate Lewis' pain and other subjective complaints with Eleventh Circuit precedent.  To the contrary, the Court finds the ALJ did articulate sufficient facts to disregard Lewis' testimony.

The Eleventh Circuit stated "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision so long as [his] decision . . . is not a broad rejection which is 'not enough to enable [a court] to conclude that the ALJ considered [a claimant's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561).  In *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983), the Eleventh Circuit held "this circuit does not require an explicit finding as to credibility," but will accept the implications which are obvious to the reviewing court. It is the duty of the ALJ to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272,

1275 (11th Cir. 2003).   A full and fair record enables the reviewing court "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir.1988) (internal quotations and citations omitted).   This Court will reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted."   *Keeton v. Dep't of Health and Human Servs*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The pain standard has been maintained as:

In order to establish a disability based on testiomnoy of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).   The burden of proving disability rests on the claimant, and the claimant is responsible for producing evidence that supports his claim and allows both the ALJ and the Commissioner to reach the proper conclusion.   20 C.F.R. § 416.912(a).   Once again, "a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."   *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

The Court notes that the ALJ did look to the limited medical records that were provided by Lewis and stated that "[a]fter consideration of the evidence, the undersigned

Page 16 of  21

finds that the claimant's medically determinable impairment could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (Tr. 13). The ALJ came to this conclusion after "consider[ing] all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (Tr. 12).

The Court recognizes that the ALJ may use his discretion to decide the weight to assign to testimony from Lewis about pain and other symptoms so long as the ALJ articulates the reasons for that decision. *See Holt*, 921 F.2d at 1223. (wherein the court held that because the ALJ did not set out why the testimony was discredited, the complainant's testimony was held to be true). Generally, the Court will not reverse credibility findings of the ALJ. In the exercise of discretion the ALJ must articulate the reasons for discrediting the witnesses testimony. *See Jones v. Dep't. of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (stating that the ALJ must give reasons that are based on substantial evidence if they chose to discredit the claimant's testimony). Lewis argues that the ALJ must cite specific reasons for the credibility finding and the reasons for that weight. (Pl. Br. 7) The ALJ discussed the inconsistencies within the medical records as well as the testimony of Lewis finding that his "credibility is undermined by his changing story regarding the reason he left his last job." (Tr. 13).

The ALJ uses the phrase "[a]fter careful consideration of the evidence," signals that the ALJ considered the testimony by Lewis in conjunction with the other medical evidence and testimony presented to the ALJ.  (Tr. 13).  The Court has examined the ALJ decision in this case under the well-known instruction from *Wilson* which states "[i]f the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002).  A full reading of the opinion with respect to the credibility of Lewis indicates the ALJ had sufficient evidence to discount the testimony from Lewis concerning the severity of his pain.  The ALJ's reasons to reject Lewis' testimony do not provide grounds for reversal.  The Court finds that the ALJ gave sufficient weight and consideration to all evidence as well as gave sufficient reasoning within the opinion as to why the ALJ chose not to credit Lewis's testimony.  *See Holt*, 921 F.2d at 1223.

**C.     The ALJ properly evaluated the medical consultation from Dr. Estock.**

Lewis argues the ALJ gave an inappropriate amount of weight to the opinion of Dr. Robert Estock as a consultant whose  report consisted primarily of checked boxes.  (Pl. Br. 11-12).  The ALJ only used the medical report of Dr. Estock to support other findings and did not use it to displace any other medical evidence.

It is well established that the opinion of a reviewing, non-examining physicians, when contrary to those of examining physicians, are entitled to little weight.  *Ortegea v. Chater,*

933 F.Supp. 1071, 1074 (S.D. Fla. 1996) (citing *Lamb v. Bowne*, 847 F.2d 698 (11thCir.

1988) and *Sharfarz v. Bowne*, 825 F.2d 278 (11th Cir. 1987)); *see also Broughton v. Heckler*,

776 F.2d 960, 962 (11th Cir. 1985) ( holding that the opinion of a non-examining physician

could not provide the required "good cause" to discount the opinion of the claimant's treating

physician as is due to little weight if it is contrary to the opinion of the claimant's treating

physician).  Lewis did not supply any medical records of a treating physician.  The ALJ cites

the report from Dr. Estock three times in the opinion and in each instance the report is cited

as support of other evidence with words to the effect of "[t]he rating is supported by, inter

alia, the opinion of Dr. Estock."  (Tr. 11).

Lewis recognizes that the "ALJ's opinion was neither supported nor contradicted by

medical evidence because the claimant lacked such evidence at all" and argues that the ALJ

should have ordered a consultative examinations because Lewis was unable to pay for

medical assistance.  (Pl. Br. 12).  The regulations provide that the ALJ *may* order a

consultative examination when warranted.  20 C.F.R. §404.1517 (1983) (emphasis added).

It is reversible error for an ALJ not to order a consultative examination when such an

evaluation is necessary for him to make an informed decision.  *Ford v. Sec'y of Health and

Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981).  Lewis has the burden to produce evidence

of his alleged impairments and there is substantial evidence to support the ALJ's decision not

to request a consultative examination as sufficient information was available to him to make

an informed decision and the report in question was only cited in support of other evidence

presented.

**D.      The ALJ properly concluded Lewis had the ability to perform past work.**

The ALJ found Lewis "capable of performing his past relevant work" being "a medium, unskilled job." (Tr. 13).  The ALJ considered the specific job performed by Lewis as well as the requirements of an unskilled job of medium level of exertion in the national economy.  (Tr. 14).  The ALJ also found that "[h]e successfully performed this work for many years, and left because of a refusal to take a drug test, not because of some symptom associated with an impairment."  *Id*.  The ALJ further clarifies that Lewis' "low IQ is a life long condition and existed during the time he performed this job."  *Id*.  Lewis incorrectly argues the findings are not supported by substantial evidence.

"The claimant [] bears the initial burden of proving that []he is unable to perform [his] previous work."  *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir.1988)).  Lewis provided nothing more than self serving statements via his testimony and sworn affidavits as evidence that he was unable to perform his past employment.  The ALJ properly found that he is able to perform his past relevant work.

## V. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by

substantial evidence and proper application of the law.  It is, therefore, ORDERED that

the decision of the Commissioner is AFFIRMED.  A separate judgment will be entered.

DONE this 13th day of September, 2011.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE